Good morning. My name is Matthew Dietz and I represent the appellant Jeremy Burton. I will focus my argument this morning on the District Court's exclusion of Mr. Burton's sole expert witness at trial, and unless the Court has questions, I will rest on our briefing with respect to the sentencing issue. The District Court committed reversible error when it excluded defense witness Dr. Peter Voss, who is an expert in pharmacology. Dr. Voss would have testified about the physiological effects of the narcotic drugs found in Mr. Burton's drug screen on the day of his arrest. This is Jay Smith. How would that not be testimony about the defendant's voluntary intoxication? Your Honor, it was not evidence of voluntary intoxication. Mr. Burton never asserted a defense of voluntary intoxication. He agreed that defense was not available to the possession charge here. Mr. Burton instead had one trial defense, that somebody had planted the charged firearm on his person while he was unconscious and overdosing. Why would the contents of his, why would the pharmacology evidence have any relevance to the defense you just stated? So, most saliently, Dr. Voss would have testified about timing here. Timing is the the crux of this case. Dr. Voss would have provided a time frame from before Mr. Burton's overdose, which prompted the 9-1-1 call, where Mr. Burton would have been experiencing the effects of the narcotic drugs in his system, including disorientation, confusion, analgesia, or numbness, and that in turn would have expanded the time period for the jury when Mr. Burton was in a vulnerable state, susceptible to having the gun planted on him. Voluntary intoxication is a red herring. Mr. Burton never raised it. It was raised first by the government in its motion in Lemonade, where the government sought to exclude it based on this rationale. The district court instructed the jury at the government's request that voluntary intoxication was not a defense, and so to the extent the government argues that this was misleading or confusing the jury, we have to presume that the jury could follow that clear instruction of law from the court, and therefore that mitigates those risks under 403. Counsel, was there any evidence offered or intended to be offered other than the expert testimony to show that the gun was planted on Mr. Burton? Yes, Your Honor. There was testimony that there were other people present in this house prior to Mr. Burton's overdose. They were present. Was there any evidence that they planted the weapon? There wasn't evidence directly about what was being what was planted because Mr. Burton himself testified, but he testified that shortly after he ingested these narcotics, he passed out. But he did testify that prior to that happening, prior to his passing out, there were other people, multiple people in this house, some of whom he did not know. In closing, the defense argued that one of those people could have been the ones. The reason I ask the question is kind of to follow up on Judge Smith's question about if there really was no other evidence, how do you distinguish this from simply providing evidence of voluntary intoxication? There is the Seventh Circuit decision, U.S. v. Reed, that supports your your theory, but I didn't see any attempt to show that the gun was planted other than just, well, I was I was voluntarily intoxicated and therefore maybe it was planted. So in addition to the other people who are unknown to Mr. Burton that he saw physically in the home prior to his out, we hear a man's voice on the 911 call. Law enforcement testified that when they arrived at this home, they didn't see this man. They didn't know who he was and they didn't follow up on who he was. In closing, the defense argued that that man could have been the one to have planted the gun. Mr. Burton himself also testified and he testified about his long experience with the Mille Lacs Tribal Police Department. He testified that some of those interactions that he had with law enforcement up there was harassment and his testimony was that he believed that they could have planted the gun. So there were multiple individuals from different periods of time who could have planted this gun. The missing piece, though, was the period of time predating the overdose. The jury heard evidence about unconsciousness and overdose. Law enforcement testified that he was unconscious when they first arrived. Paramedics and the emergency physician's assistant testified about the effects of the drugs. The missing piece here that Dr. Voss would have provided is the period of time before the overdose and an order of minutes where Mr. Burton would have been experiencing the effects of the drugs. When the district court ruled to exclude the expert testimony, it said, I'm excluding this evidence that would go solely, I think the word then offered it for other purposes and made it clear that you were not offering it solely for a voluntary intoxication defense. So the district court excluded under 402 and 403 based on this voluntary intoxication red herring. Prior to the district court ruling the way it did on the government's motion to eliminate, the defense made clear that it intended to offer an argument, a defense about somebody else planting this charged firearm. So it was clear in the record before the district court ruled that this was going to be the defense at trial and that was the relevance and purpose and probative value of Dr. Voss's testimony. But nonetheless, the district court hung its hat on this red herring and excluded the evidence. Even after the district court issued its order on the motion to eliminate, the defense made an offer of proof during trial. This is the end of the first trial transcript where the defense specified exactly what Dr. Voss would have testified to and nothing changed. The district court's orders remained in effect and the evidence wasn't allowed in. There was an instruction, right? After the involuntary, I'm sorry, voluntary intoxication is not a defense, instruction 19 was the defense's theory, right? Correct. So was there any discussion at the maybe to follow up on Judge Gross's question, why that evidence of Dr. Voss would not have been relevant to the defense's theory of defense? In other words, it looks like it's been distinguished by the district court and the instructions, no voluntary intoxication, but if you think it was planted on him while he was unconscious, that is a defense. Was there any discussion about that distinction? I don't believe so, Your Honor. The district court was troubled by this during the final pretrial conference. The district court expressed its concern that it was excluding potentially relevant evidence, but the final pretrial conference occurred right before jury selection began and the final order on the government's motion to eliminate wasn't issued until the next day when witness testimony began. I think that the district court just, you know, was troubled by this, but ultimately accepted the government's straw man that this was just for voluntary intoxication, and since the law is clear that voluntary intoxication is not a defense, the district court relied on that clear line of precedent and said, I'm going to exclude it, and didn't make this distinction about what it actually, what the purpose and what the relevance and what the probative value actually was, and that's error not only under 402 and 403, but also because it deprived Mr. Burton of his right to present a defense. This was his sole defense at trial. Your Honor, didn't you actually present that defense, though, and there seemed to be evidence that you could use in that the amount of narcotics that the defendant ingested would demonstrate that he was easily unaware of his surroundings, unaware of his environment, diminished in capacity, all of the things that you would like to say that the doctor's expert testimony would verify. The other evidence supports that, that he was definitely not in a normal conscious condition. Certainly, Your Honor, and it really was not disputed that once the law enforcement arrived in this bedroom where Mr. Burton was overdosing, that he was on a cocktail of drugs, that he was unconscious when law enforcement arrived. The issue, though, becomes when we have other evidence of other people inside this home prior to law enforcement arriving who Mr. Burton did not know, who law enforcement did not know, and who law enforcement did not follow up on. That provides reasonable doubt in the jury's mind that Mr. Burton did not have direct physical control over the firearm, which is required by this circuit's model instruction 8.02, because there was a period of time... What does the expert testimony have to do with that? There was a period of time... The presence of the other people. There was a period of time preceding the overdose, which prompted the 911 call, where Mr. Burton would have been experiencing the effects of the drugs, confusion, disorientation, analgesia, which rendered him unacceptable to having the gun planted on him well before law enforcement ever arrived. With that, Your Honor, I'd like to reserve the rest of my time. Thank you. May it please the Court. Good morning, Your Honors. My name is Andrew Dunn. I'm an assistant U.S. attorney for one more week, and I represented the United States both at trial and on appeal. In light of the discussion with Mr. Dietz and the Court, I also will address only the evidentiary issue regarding Mr. Burton's state of mind and his susceptibility to a firearm. Unless the Court has questions about the substantive reasonableness of the sentence, I will stand on our brief. Counsel, would you agree that if the defense is that someone planted the gun on his person rather than involuntary intoxication, that it would be relevant and admissible evidence? Okay. Let's just talk about planting the gun for a second. If there's evidence that somebody planted the gun on a defendant, that's not a crime regardless of the mental state, regardless. And if the defendant was unconscious and somebody dropped the gun in his lap, like the dicta in Reed, it wouldn't matter what caused that defendant to become unconscious or comatose, whether it was a voluntary intoxication or a medical emergency. But it would explain how the gun would get there without their knowledge. It would, Your Honor, except that two things. Number one, there was ample evidence regarding Mr. Burton's intoxication leading up to his overdose. And number two... Well, it might be cumulative, but perhaps it's not the best evidence that the defendant wishes to present in support of their defense. Again, I just want to clarify that the testimony at trial came from a physician's assistant at the hospital that analyzed the toxological screen conducted on Mr. Burton when he was brought to the hospital. That physician's assistant, Emery Lark, I think his name was, he analyzed that and he said that would have caused an altered mental state. So it was in the record. And the court properly instructed the jury on both the voluntary intoxication issue and the theory of defense. And the jury rejected it. The jury rejected it because there was no credible evidence of anybody planting that gun. But what about the point that counsel's made about the timing? In other words, it's one thing to say everybody agrees he was unconscious at the time that the gun was found on his person. And so you've got that. But I think the defense is saying, well, there's a period of time before everybody showed up, before these official folks arrive at the scene where someone could have planted it. And he needed to be unconscious at that point, whether by voluntary intoxication, as you say, or a medical condition. And the defense needed an additional stretch of time in order to support that defense. Again, I think it goes to the evidence of voluntary intoxication, the drugs in his system, and the evidence of anybody planting a gun. There was evidence in the record about, in his urine and blood, methamphetamine, cocaine, THC, benzodiazepine, comes from the Xanax bars in his pocket, and fentanyl. All of those drugs were in his pockets, which was in the record and which was testified by the physician's assistant that would have caused an altered mental state. The testimony of a pharmacologist who was not present would have just been cumulative of the testimony presented by the physician's assistant. But did the physician's assistant talk about how long he would have been likely unconscious? No, he wasn't asked that. The defense called the physician's assistant. The defense didn't ask him that. And the expert opinion doesn't give. It's an unspecified period of time. Are you saying it's just not relevant? I mean, what's the basis for saying the defendant cannot bring an expert to support a defense that the district court has given an instruction on? Okay. Well, a defendant's constitutional right to present a complete defense, in this case, was argued it was an incomplete defense. That's not outweighed, or that doesn't outweigh a district court's obligation to apply the rules of evidence and make a decision about what testimony is admissible or excluded because it may be cumulative, marginally relevant, or whether it's helpful to... How do you characterize the district court's ruling on excluding this evidence? An excellent one. How do I characterize... What was the basis? You said the district court has the discretion to make these decisions on evidence, which I think we would all agree. I was asking how you read the district court's reasoning. Excellent question, Your Honor, because it gets to the point that Judge Schilt ruled that that testimony was irrelevant under 402-403 based upon the well-settled law about voluntary intoxication as no defense. That was it, but the court on appeal can uphold an evidentiary on any ground supported by the record. It doesn't have to be the reasonings put forth by Judge Schilt. Well, Counsel, you noted that there was no other evidence that the weapon was planted, and I'm wondering if in that factual scenario, the expert testimony is really indistinguishable from just a voluntary intoxication defense. It blurs the line, Judge. Yes, absolutely. I think that was the conundrum in this case. I want to push back on the argument that this was a government straw man because the defense submitted a notice of putting in evidence from this pharmacologist that Mr. Burton's, and this is a quote, ingesting a combination of drugs resulted in a confused mental state that persisted for some unspecified time before the overdose and following resuscitation. That's how I thought it was voluntary intoxication. It wasn't that the government created a straw man. That evidence is inadmissible under those cases that say voluntary intoxication is not available as a defense to negate the men's ray in a general intent crime like felon in possession. Now, I just want to point out Reed. Reed doesn't go against that, the Seventh Circuit. That was a jury instruction case, not an evidentiary case, and what the Seventh Circuit held in Reed was voluntary intoxication is not available as a defense to negate the men's ray required for general intent crime like felon in possession, which is why it upheld the district courts not giving the jury instruction. In dicta, the Seventh Circuit said, we're not saying that there might not be an appropriate case where someone is comatose and the evidence is that somebody dropped the gun in the defendant's lap. That's not the facts of this case. There's no evidence. Again, the gun was in his pocket with his wallet, his I.D. I know you were on a trial roll. I was impressed. My question goes to what you're saying here. You're reciting the evidence that was in the record. If, in fact, your position is this was a fanciful defense, there's just no basis for it in the record, why would the district court give instruction on it? You get an instruction as a defendant if you can have a plausible explanation to the jury why it could support your case, but did you object to instruction number 19? No, because I didn't want to object to a defendant submitting a proposed theory of defense. We would be up on appeal arguing that issue. Do you see the tension there? I'm thinking, well, the district court has said that this defendant can present this to the jury. This is a valid defense. If it's found, you must find him not guilty, but then the part of what they're trying to prove is that he was unconscious during a time period when the planting took place. You're saying, well, that's not relevant. It's fanciful. It just can't be. I'm trying to put those two things together. Because if Mr. Burton was unconscious because of a medical emergency and there was credible evidence that somebody dropped the gun or placed the gun in his pocket, it wouldn't matter how he got to that point, whether he was having a heart attack, whether he was having a stroke, or whether he was... But when you still have to put on the other... Let's take it out of the voluntary intoxication and say that it was a medical emergency. Let's switch that out and say, Instruction 9 would actually elicit testimony from an expert that said this person was having a medical emergency, had a stroke. Given the medical information I have, I think a person described like this would be unconscious for X amount of time. What if it was that? Taking the intoxication part out of it. Those aren't the facts of this case. Because we don't know that unspecified period of time before unconsciousness that he had an altered mental state, whether it's voluntary intoxication or a medical emergency. I believe that Instruction 19 given by Judge Schiltz accurately states the law. The defense in this case is that someone planted the gun on Mr. Burton while he was unconscious. If you find that this is true, then you must find that Mr. Burton did not knowingly possess the firearm and therefore must find him not guilty. That's an accurate instruction regarding the theory of defense following the voluntary intoxication instruction which has been approved by this court in Horne and McMillan. To speculate about whether this period of time before unconsciousness would be relevant or fanciful, again, evidence was in the record regarding those drugs in his system. It's common sense that if someone is overdosing on narcotics, rendering them unconscious, that they're going to have an altered state of mind beforehand. That was the testimony of the physician's assistant. There was no need for a pharmacologist who had no connection to this case other than being hired to about what's already being testified to by the physician's assistant, which, by the way, the toxicology results were placed into evidence, which I think is why Judge Schiltz gave Instruction 18 to say voluntary intoxication is not a defense to negate intent or knowledge, mens re, on a crime. Again, I also want to just say on this, who planted the gun? The voice on the phone, it came out that the woman who called 911 was asked what the address was so the police could get there. She didn't know the address. She ran outside the house to ask somebody. That was the voice. That is no credible evidence that anybody planted the gun. The defense of trial was that the police planted the gun. That was a defense. Judge Schiltz, when Judge Schiltz was talking about, and I see my time is up so I'll end with this quote, Judge Schiltz analyzed that evidence when the court was talking about Mr. Burton's lack of remorsefulness at the time of sentencing. Mr. Burton took the stand and made the claim. This is a quote from Judge Schiltz who sat through the trial. Mr. Burton took the stand and made the claim that the very officers who worked to save his life must have taken a break from performing CPR on him and administering Narcan to him to plant a firearm on him while he was unconscious in plain view of his girlfriend who was standing right there, but who never said a about the police planting a firearm. It was on body-worn camera. Again, I just think the evidence about somebody planting a gun, that's what's fanciful, not his intoxicated state. I'm sorry. Thank you, Mr. Dunn. Mr. Deese, we let Mr. Dunn go on a bit. We'll give you a full two minutes if you would like it. Dr. Voss' testimony was not and could not be replicated given the district court's ruling. The physician's assistant testified. He was a percipient witness. He testified as a lay witness to what he actually saw on the drug screen, what he actually saw in that emergency department. He did not testify about the timing issue that we've raised in this case and what the defense went to. Sure, he said that these drugs would have created an altered mental state. Sure, he said that these drugs would have caused an overdose and unconsciousness, but he did not testify because the district court precluded this testimony about the timing, the onset of these symptoms of the drugs. That's the missing piece. Dr. Voss' testimony was not replicated because of the district court's ruling. The issue here is not mens rea. It's whether Mr. Burton had direct physical control of the charged firearm during the time in question preceding the overdose. Dr. Voss would have testified that it was on the order of minutes where he would have been in a vulnerable state. There was evidence in addition to the other unknown people who were present on the scene prior to law enforcement arriving. The ATF Nexus expert testified that this was a sub-compact handgun. In closing, the defense argued these other unknown individuals could have planted the gun, and had they wanted to plant a gun, the perfect gun would be a sub-compact gun because it's easy to stick into somebody's shorts pocket. So there was definitely evidence indicating that somebody planted the gun such that this all became relevant. The district court abused its discretion even under that lower abuse of discretion standard which we disagree with. The district court abused its discretion by relying on an irrelevant and improper factor to exclude this testimony under 402 and 403. It relied on the voluntary intoxication, red herring, to the detriment of actually considering the true purpose for Dr. Voss' testimony, its relevance, and its probative value. That misconception completely skewed the district court's 402 and 403 analysis, and we ask that the court vacate Mr. Burton's conviction and remand for further proceedings. Thank you. Thank you.